We are recording. Hear ye, hear ye, this Honorable Appellate Court for the Second Judicial District is now open. The Honorable Christopher M. Kennedy presiding. Your Honors, the only case on the docket this morning is 2-24-0287, the People of the State of Illinois Plaintiff Appellee, the Quinton J. McKee Defendant Appellant. Arguing on behalf of the Appellant, Mr. Anthony J. Santella. Arguing on behalf of the Appellee, Ms. Pamela S. Wells. All right, Counsel, you may begin when ready. Thank you, Your Honor. Good morning, Your Honors. Good morning, opposing counsel, and good morning to the members of Mr. McKee's family, and may it please the Court. My name is Anthony J. Santella, and I represent Quinton McKee in this appeal. For today's argument, I will focus on the issues of the self-defense instructions, the ineffective assistance regarding the definition of intent, and the reasonable doubt argument concerning the aggravated discharge conviction related to the girlfriend, but I can answer questions on any issue raised. So, to start, on self-defense, the state has agreed that there was an error where the trial court did not give the defense's requested instructions on self-defense. This court should accept that as a concession, that there was an abuse of discretion where the court did not give these instructions, and review for harmless error. Now, regarding harmless error, the instructional error in this case regarding the self-defense instructions justifies a reversal and a remand for a new trial. The evidence against McKee is not so clear and convincing that McKee still would have been convicted if the jury had received the self-defense instructions. In part, we can tell this from the same evidence that justified giving the self-defense instructions in this case. The testimony from the father that he intended to ran his truck into McKee when he got into the truck, that he put pedal to the metal, as he said, and he pushed McKee onto Orchard Road until he could not push any more, that he pushed him all the way to the median. This is evidence that justified giving the self-defense instructions, and it was evidence from which the jury could have concluded, had it been properly instructed, that McKee did act with a justifiable use of force when he fired the three shots. Counsel, what about the argument that he was already out of danger by the time he fired the shots? That the father was out of danger, or that McKee was out of danger? That McKee was, the ramming had discontinued at that point. I don't think that there's much to countenance that argument, Your Honor. I think the main thing with the ramming is that this was not just a fender bender. The father, McKee's feet were on the brakes, the brake lights were on, the father did say that, and he pushed McKee all the way onto this heavily trafficked road and pushed him all the way to the median while McKee was trying to stop it. So there is a dispute in credibility over whether there was oncoming traffic. I think credibility concerns and disputes were for the jury to decide, but certainly this was a heavily trafficked road. This was a situation described as aggressive and a potential road rage incident by a witness, and McKee, according to his testimony, which the jury could have weighed and resolved these inconsistencies of credibility, he said he did not even realize that this was the father until much later in the incident. So I don't think that there's much to say here that McKee was out of danger. You also have the testimony that McKee said he saw the father with a gun. Again, that is a credibility determination for the jury to decide. You also have McKee's testimony that the father had previously threatened him at another occasion. So I think with all these things going through McKee's mind, and there is a subjective part to the self-defense test, that McKee would have actually and subjectively believed that danger existed, that he would not have realized that he was out of danger, that he was not out of danger because he had just been pushed onto this heavily trafficked road, and that the self-defense instructions not only should have been given, but the error in not giving them was not harmless. The jury, had it been properly instructed, could have concluded that McKee acted with a justifiable use of force with the charges related to the father. If the defendant did not appreciate that the driver of the other vehicle was the father, then what difference does it make that the father had previously threatened him? So looking at the testimony, when McKee realized it was the father, that was, I think, right as the ramming onto Orchard Road started. There was testimony from the father that he saw McKee in the mirror. McKee then, he realizes it's the father, but what McKee says is that when he is driving behind the girlfriend and this car veers in front of him and follows him onto that access road behind Walgreens, at that point he didn't realize it was the father. So I think looking at the context of all of this is important. He realizes it's the father as he's being pushed out onto the road, being pushed all the way to the median, and then that's where that previous threat really comes into play here as part of, as one of these elements for self-defense. Because especially at that point, McKee would believe that there was an imminent danger of great bodily harm. I mean, certainly he's being pushed on this heavily trafficked road, and if there's not oncoming traffic, there's the potential for oncoming traffic. McKee says there's oncoming traffic, so he believes he's in imminent danger here, and that threat does come into play. But what you've just described is he's in imminent danger, if you will, from oncoming traffic, not from the father. Well, the father is ramming him and pushing him onto the road, which the father, that's what the father's own testimony is, that he was pushing McKee onto the road while McKee's brakes were on. And so the danger might be coming from oncoming traffic, but the danger is being facilitated and caused by the father, specific to that ramming and pushing onto the road. And again, I think especially at that point, because that's when McKee realizes that it is the father, that he remembers and recalls that threat, that really helps to show that element of the subjective belief. I think if the veering happened and he realized it was the father right I mean, maybe he would have taken a different course of action and tried to speed away faster, but when he's going through that access road and he says that the father's ramming into him there, I think McKee, to his testimony, is still saying, who is this person and what is happening? And when he realizes it's the father, there really is that subjective fear of imminent danger that occurs. And there is that objective, I am being rammed and pushed onto this heavily there will be cars coming. I don't have any other recourse here. And in McKee's testimony, he is firing the shots just to scare the father away. So I think for those reasons, and I think it should be noted here that the jury did send out a note asking about justifiable use of force, asking when use of force is justified. I think one of the keys to cases from reviewing courts involving harmless error analyses for jury instructions is does the jury realize, do they know that there's a defense, that there could be a defense from the evidence? Here, the jury inferred that maybe they realized, maybe they've heard of self-defense, maybe they kind of vaguely know about it. They probably don't know how affirmative defenses work. They don't know that this was requested by defense counsel. And what is the jury told? You have the instructions that are given to you. If the jury had received the self-defense instructions, I think it could have concluded from this evidence that McKee acted in justifiable use of force. And so for those reasons, the error is not harmless. I'd like to move on to intent. The definition of intent here is that from the jury instructions is that a person acts with intent to accomplish a result or engage in conduct when his conscious objective or purpose is to accomplish that result or engage in that conduct. The jury manifested confusion about the term intent to kill. They asked for a legal definition. Defense counsel could have sent out the term or asked, requested that the definition of intent I just read be sent to the jury. Had that been the case, the jury could have concluded from this evidence that McKee did not act with the conscious objective or purpose to result in the death or great bodily harm of the father. And that goes back to some of the same evidence, but particularly McKee says that he was trying to scare the father away and that he did not intend to cause him any great bodily harm. Um, so from there, that intent, that intent term could have made a material difference to the outcome of McKee's case. Uh, so I'll move on to reasonable doubt here again. So this concerns specifically the conviction for aggravated discharge related to the daughter. That on the evidence that the daughter heard a purported gunshot without seeing McKee fire a weapon. Uh, there's no firearms evidence collected in the area of the alleged gunshot. There's no report of a gunshot in that area. And the girlfriend did not see McKee fire a gun or holding a gun at the time. Um, the state is relying on a lot of circumstantial evidence here because there isn't direct evidence. Um, but specifically there's, there was a lot of talk at trial about this small dense on the car of the girlfriend. I would encourage this court to be sure to look at pictures of that dent. Um, it's really more of a mark and it's not clear where that, where that dental mark came from. It should be noted that the girlfriend was driving a used car. That car did have other damage not related to this incident and that the girlfriend says that she was driving that day, the day of this incident up to 109 miles an hour and weaving in and out of gravel. Um, even in the light most favorable to the state, there's not enough here to say that that's such a small mark was the result of, of a bullet deflection or ricochet. And to the actual bullet holes that we're seeing, um, on the father's car, there's a real clear contrast between an actual hole that's visible on the lower side of the father's car versus a mark where we can't really say where it came from. And the state's own witness, um, investigator, my you officer, my you, he said that there were experts that could this determination, but he was not one of these experts. Uh, so therefore there's not enough evidence here to say that to, to, to support the aggravated discharge conviction, even in the light most favorable to the state. And we would ask this court to reverse that conviction outright. All right. Counsel, I have a question about the, um, the intent to scare the, the, um, the father, uh, I think the court had, uh, stated something to the effect of the, uh, the fact that the bullet holes were in the car, um, was inconsistent with that. Um, what, what's your counter to that? The bullet holes are low. They were not aimed at, uh, you know, for example, the window that there, so there's three shots here. The first two shots were low. I believe the first bullet was recovered in that sort of well area where a person would rest their feet. Um, the second bullet I think was still lodged in the car, but it was sort of in that dividing line between the, uh, driver's door and the passenger door on the driver's side. Um, I'm from the, from the point at which McKee testifies, uh, about, um, the father pulling up the car next to McKee and pointing and pointing a gun at McKee, it would seem that they're pretty much lined up and McKee has said, well, I just want to scare him away. So he shoots two shots in directions in an angle that are not designed, not intending to cause the father any harm. Now, the third shot McKee says that the gun probably kicked up because that shot went far. It went up. It struck a Walgreens again. That didn't cause any harm to anybody. Um, but I think that that shows that McKee is not trying to cause any harm. He's just trying to make some shots to share this, to scare this person away because of the imminent fear he feels about everything that happened. And certainly there could be a credibility issue with some of the things he says regarding, well, maybe the gun kicked up for that third shot. Well, the jury is in the best position to resolve that credibility contest. McKee did testify. He provided this evidence and there is evidence to back it up. Certainly the father didn't suffer any injury. Um, the gunshots did not strike him. And I think that that goes to show that while he is trying to scare the father away, that does go to his intent. He did not consciously, he did not have the conscious objective to cause great bodily harm to the father. He was trying to get out of there and he had already started trying to get out of there, um, after the father had veered his car in front of McKee. So I do think that the intent here, um, I think it should be noted too, we filed a motion to cite additional authority for the People v. Guy case where the Illinois Supreme Court held that first-degree murder requires the intent to kill without lawful justification. And what the court said there is a defendant who subjectively believes in the need for self-defense cannot, oh, I see I'm out of time. So just to briefly wrap up, I think that, uh, this court, for the reasons raised here in the briefs, should reverse McKee's convictions and remand for a new trial. This court should reverse outright his conviction for aggravated discharge. And alternatively, this court should remand for a new sentencing hearing. Thank you. All right, I see Justice McLaren has joined us. Justice, do you have any questions of the appellant? Pardon me. Counsel, I believe you indicated that the jury was in the best position to determine what the facts were. Didn't they do that? Um, I think that the, the jury was not able to fully deliberate without the self-defense instructions. So I think that the short answer is no, they couldn't fully deliberate. Um, because when they ask about the legal definition, when they ask about the legal definition of intent, when they ask about when force is justified, and then they're told you have the instructions, they cannot fully, um, make that determination. When the evidence of self-defense is raised, when these things are raised, the jury should be deliberate or should deliberate with, um, all the applicable instructions. Um, Greg, can we, can we mute one of, um, Justice McLaren's devices there? Um, I think it's causing feedback. I don't, I don't have the controls on this meeting. Greg? Well, it, uh, it, uh, the meeting launched, and then when I hit the video, it disappeared. So I'm still on my phone. Can you hear me? Yeah, it looks like the feedback itself. So, all right. Any other, I think what was no, thank you. All right. Uh, Justice Jorgensen, any, no, I have no other questions. All right. Thank you, Mr. Santella. You will have time on rebuttal. Um, as well as you may proceed when ready. Greg? Your honors, counsel, may it please the court. What we have here on the self-defense, when you look at the, um, harmless error analysis, which we're asking the court to consider, you also have to look at what other instructions would be given. And one of the other instructions would be the initial aggressor instruction, as well as you're not entitled to use of force of escaping a forcible felon or felony or committee one, which is 24-25.10. And he clearly was escaping a forcible felony because he was convicted of shooting at Deja, and the self-defense instructions were not sought in relationship to Deja. You also have to look at his consciousness of guilt in looking at the overwhelming nature of the evidence. And the standard review, when we're looking at harmless error, is whether the evidence of guilt is clear and convincing, then the instructional error is harmless. And would the result of the trial have been different? So when you look at all of the instructions that would have been given, as well as the evidence that is clear and convincing, including his consciousness of guilt, you have harmless error in this particular case. What we know is that he had blocked in the father after he had shot at Deja. He was convicted of that case. I won't go into all the details of what he had done to Deja, but he pulls up and she says he used an American flag gun. That American flag gun was found on, pictures of that gun was found on his phone. The father, we know he had a gun because he shot, and he admits he shot at Darvis. We also have that minimal damage. Counsel referred to it as it wasn't a fender bender. It absolutely was. All we have on the damage to the truck is a little bit of a bent license plate. And all we have on the damage to the defendant's car is a popped out um, reflector out of the bumper. This is not a case where there's all kinds of damage to the car. He wasn't hit by oncoming traffic. There aren't screeching tires. There's none of that. So to say that he, that Darvis was repeatedly ramming the defendant's car is contradicted by those photographs. And I asked the court to take a look at the photographs of the little bit of damage to the front of Darvis's bumper and the little bit of damage to the back of the defendant's car. This was not a repeated ramming of the defendant's vehicle. Again, defendant was not struck. There was no rear miss, near miss. There wasn't a screeching tires. And when he shot at Darvis, Darvis was next to him. He shot into the driver's vehicle. He didn't shoot once. He didn't shoot in the air. He shot into the cab where this man was sitting, not once, not twice, but three times. He missed the third time. So he absolutely intended to kill. He had to lean over. He had to get out his gun, if you believe him. He had to then aim the gun at Darvis. And remember, his truck has a higher wheelbase. So of course, the defendant who's in a SUV next to him is shooting into the lower part where Darvis's lower body was. And the bullet is recovered from the vehicle, the interior of the vehicle. It hit the center console. He absolutely intended to kill Darvis. And it was not defendant that fled off. It was Darvis that tried to escape the gunshot. If Darvis has a gun in his hand, he's going to be using it to fire at the defendant. There was a work bag. His employer had a no firearms policy. And the defendant never brought up that Darvis allegedly had this gun until weeks later after the police couldn't look for it is ludicrous when you look at it in light of the difference in the wheelbase. Anybody who has sat at a stoplight, he's in the driver's seat, there's a passenger seat, and then there's another driver's seat. And Darvis is up higher, yet supposedly he sees a bag on his lap. If you sat at a stoplight next to somebody on your right hand side, you're not seeing what's in their lap. It's not possible, especially when they're in a higher vehicle. Now, consciousness of guilt. He doesn't contact the police. He finds ways to clean gunpowder out of his car and off his hands. He has his car detailed. He hides from the police. He searches ways to flee the state and get a rental car. And he searched ways to beat an attempt murder charge. He didn't search out ways of, oh, I had a gun pointed at me and I was scared. He searches out ways to beat an attempt murder charge. This is all evidence of his consciousness of guilt. But significantly, when you consider all of that evidence, you have to look at the other instructions that would have been given. And Guy is different. That was the case that was cited as additional authority. And I want to point out why Guy is different. Guy is different because in that particular case, the defendant was found guilty of second degree murder of one victim. That necessitates that it is necessary for the jury to have found that he had a mistaken belief in self-defense. We do not have that here. We do not have a legally inconsistent verdict, which is what the Guy case was addressing. It did not address harmless error analysis. And it did not address the jury making credibility findings. The defendant testified that he didn't intend to kill, but the jury verdict was that it was not based on mistaken belief in this particular case because they were never instructed on that. And he never testified that it was a mistaken belief in self-defense. He said, I was trying to scare him off. And you don't have to shoot three times into the cab where the man is sitting to scare him off. You shoot up into the air. You shoot in some other direction, but you don't shoot at a person. Finally, the self-defense question, we don't know if it related to Denvaris. We don't know if it related to defendant. We don't know if it related to Deja. What can they do, any of them, to defend themselves? And Denarvis had pushed the defendant out of the way so he could get home because defendant was leaning over into his vehicle. As to the knowing, the jury instructions and the committee comments specifically, I'm sorry, intentionally, I misspoke. There is no confusion as there was in the Sperry case. There is no where they had both intent and they had knowledge in the same question. There was confusion there. We do not have a situation where they're asking multiple times in a short period of time for a definition. And the committee comment says that we have a common understanding of the word intent. Not only that, but we have to look at it in light of the other jury instructions that were given and would be given. So when you look at the fact that it has a common understanding of that word and that they did not ask for it, they didn't multiple times in a short period of time. They did not ask for the definition to be given with multiple uses, both knowledge and intent in the same question. The confusion was not there as it was in Sperry and the other case that was cited by the defendant. I think this is a situation where you have to look at would the outcome have been different? And it absolutely would have not been because he shot three times at Mr. Mapp. So you don't have to look at, it is harmless error as to giving the knowing and it is not ineffective assistance of counsel by failing to raise it because counsel can make a strategic choice not to give that instruction. And he can look at whether there was, the court has to consider whether the outcome of the trial would have been any different. And when you look at the overwhelming evidence in this case where he shoots three times into the vehicle, he intended to discharge the gun. He admits he intended to discharge the gun where the vehicle was struck. It's the cab. Counsel for the defendant can say that it was on the lower part. You don't shoot into the driver's compartment without meaning to kill that person. As to the sufficiency of the evidence for the aggravated discharge, I went through a lot of the evidence when discussing the self-defense. But we're talking about Deja at this point. There is not a question that this defendant had a gun. We know that because he used it to shoot at Deja's father. We know she thought she was shot at because she called her father and said, defendant shot at me and now he's chasing me. We know that there was not damage to that vehicle before she was shot at and afterwards. We know that the, um, she heard something hit the vehicle right after the shot was fired. So, while she did not actually see him fire the gun, the question is, in the light most favorable to the state and circumstantial evidence is enough, you don't get to offer any innocent explanation and raise it to the level of reasonable doubt. That is not the standard. So, the question is, circumstantially, damage to the car that wasn't there before. We have her seeing him with the gun. We have pictures of the gun on his phone. We have him shooting at the father within minutes. So, we know he had a gun and we know the direction he fired because there's damage to the vehicle that wasn't there before. Now, counsel says that, um, Sergeant Mayu wasn't an expert. Well, the testimony and the Novak and Downer cases would disagree with that assessment and I'd ask the court to consider that. You don't even need Sergeant Mayu's testimony. Um, the officers not going to the area to get, um, ballistics information, uh, ballistics, uh, shell casings or, or discharged bullets from the area on Route 30 in Douglas where the shooting occurred doesn't give any insight into whether there was a shooting or, um, whether, uh, the it was, it was fired at. That's what Deja says. Deja says she saw him with the gun at the gas station. He threatened to kill her and make her car into Swiss cheese. He chased her and pulled up next to her driver's side. She hears a gunshot. She hears something immediately hit her car. There's damage to her car that wasn't there before and she calls her dad to report that the defendant shot her. Circumstantial evidence, um, is absolutely sufficient to sustain the conviction of, um, aggravated discharge of a firearm. I would ask that you affirm on all of the convictions. I'd ask that you affirm the sentence. I've addressed the sentencing issue in my brief and because I'm running out of time, I will not, um, address that, but I'm happy to answer any questions. A brief question. What did Deja testify to as to, um, at the gas station? What did she specifically state that she saw? That he flashed a gun at her, that he threatened to kill her and that he threatened, um, to turn her car into Swiss cheese. She described the gun that she saw as having American flag on it and then she pulled that gun, a picture of a similar, not that gun, up on her phone to show the police and that was immediately after she got home, before her dad even gets home. She calls the police to report that this, um, that the defendant shot at her. And then you have the same gun, pictures of that gun found on defendant's home, on defendant's phone. All right, Justice McLaren, do you have any questions? Yes. Uh, am I correct in believing that the, uh, aggressor in a, uh, a situation such as this, uh, is not allowed to raise self-defense unless they feel like their wife is in danger? You are absolutely correct, Justice. So the claim relating to the error committing, committed by the, the trial judge regarding the self-defense instruction, uh, would it, that self-defense instruction apply to both these alleged victims, uh, the daughter and the father or just the father? Uh, they did not ask for the self-defense related to the daughter and we believe that, um, it would have applied. The situation you're talking about, the initial aggressor, uh, had the court instructed on self-defense would have been required to give that initial aggressor, as I put in my brief. Um, in addition, if he was escaping a forcible felony, which it is the state's position that he was, he would not have been entitled to the use of force and that is an additional instruction that he would have been given, that would, the trial court would have given had given the self-defense. Okay, uh, this is somewhat of a conundrum. What do, what does the law mean when it says slight evidence? That is why we went straight to the harmless error analysis in this case, um, because slight evidence, the defendant did testify to these, the, um, elements as, uh, for the self-defense, the seven elements that are required. So we did not, um, make the argument as to self, uh, as to slight evidence and conceded that and went straight to the harmless error analysis. I, I do believe, um, the slight evidence there, there has to be some evidence and then it goes to the jury, but given the overwhelming evidence in this case, it's still harmless error. Okay, I have no further questions. All right, Justice Jorgensen. I have no questions. Thank you. All right. Thank you, Ms. Wells. Mr. Santella, uh, your rebuttal. Thank you, your honors. And I'm going to jump in because I have a lot I would like to respond to. Um, the first, uh, on the, um, claim that the state would give the initial aggressor instruction or would request that. So we did raise an issue related to that. I did not address in the opening, um, just to kind of clarify, it's not the defense's position on appeal that McKee was initial aggressor. We actually submit that he was not the initial aggressor. He testified to it to legitimate reason he was meeting the girlfriend. Um, but part of the initial aggressor use of force instruction includes that if a person who provokes use of force, um, believes that the use of force reasonably believes that he is in imminent danger of death or great bodily harm, or he withdraws from physical contact with the other person. Um, so there are exceptions to this where you could be acquitted under initial aggressor. The whole purpose of the argument we raised in the brief was that defense counsel made an argument, um, that tracks 24-25.09, but he didn't ask for the instruction. Obviously to give that instruction, you also need to give 24-25.06. So, you know, for as far as that, as far as that issue goes, it's just that there is evidence in the record that McKee withdrew from physical contact with the girlfriend and that he reasonably believed he was in imminent danger from the father. So even with that instruction that the state talks about, McKee still could have been acquitted based on the evidence. Um, to kind of follow up on a point that Justice McLaren asked, the self-defense instructions really only go to the father here. They don't go to the daughter. The defense believes that we submit that there were two incidents, the daughter incident and the father incident. And it's the father incident where, you know, he was not the aggressor here. He has an explanation. He says that we were, I was just meeting up with the daughter for this thing. Our relationship was over. You know, there were some things we still were sorting out regarding, you know, money, possession, what have you. Um, and that he was not the aggressor here. Uh, and that was a question for the jury to decide. The state made a lengthy argument about the evidence that it claims is overwhelming. Um, but that, that would better be directed toward a jury because there was evidence, which the state just concedes again from McKee, but not just from McKee on self-defense, because there is evidence from, uh, the father that he rammed his truck into McKee until he couldn't ram him anymore, that he put pedal to the metal, that he intended to ram his truck into McKee. That's not just from the defendant. That is from, um, one of the complaining witnesses here. And that I think is, is the reason why the jury is asking about justifiable use of force, because even though we're dealing with a record, we were not at the trial, the father was pretty explicit that he intended to ram his truck into McKee and did so. So this was not just a fender bender. It's not a fender bender to ram into a car and push it all the way to a median. Um, also to address what the state said about the Guy case, uh, the state is unpersuasive in distinguishing these cases. What the Illinois Supreme Court said in Guy is that a defendant who subjectively believes in the need for self-defense cannot be convicted of attempt first degree murder because the defendant would not have the specific intent to commit first degree murder. Um, here there is evidence supporting McKee's subjective belief that he needed to scare the father away, that he would just fire these shots and scare him away. That falls under what the Illinois Supreme Court said in Guy that supports McKee's claim. And just to, so this court should find that the error here, which the state concedes there was an error, was not harmless. As far as intent, um, the state really says for intent that, well, there wasn't a manifestation of confusion. They just asked for the definition. Asking for the definition is enough. Asking for the definition is enough. In this, this court's decision in Sperry, it said if the jury asks the court to define a mental state term, the court should instruct them. The court must instruct them. The same is true of the committee comments for the definition of intent. The committee doesn't take a position on whether the definition should be routinely given in the absence of a specific jury request. It's enough the jury asked for the definition of intent. If the jury had the definition of intent, they could have concluded McKee did not have the conscious objective or purpose to cause death or great bodily harm to the father. And then to just wrap up on the reasonable doubt claim, um, there's two points I really want to hammer here. The first is the state says that there was no damage to the daughter's car before this incident. We know that's not true. She said that her window was broken, the same window where that little mark was found above it. Um, again, this was a used car. If anyone who's bought a used car knows, well, sometimes you get information, um, doesn't mean the car doesn't run, but it might have some imperfections. This mark was an imperfection. The second has to do with the daughter's statements. If I could just wrap up your honors on that second point, um, about what the daughter saw at the gas station, she did not tell the police after this incident that she, or she did not have a written statement say that she saw a gun or, or heard a Swiss cheese statement, uh, that statement that he turned the car in a Swiss cheese. She doesn't report that. She says at trial, she was trying to give important information, but leaves out all that information. The circumstantial evidence here is insufficient to support a conviction on aggravated discharge. Um, thank you honors. I can answer any other questions. All right. Thank you, Mr. Santella. Uh, Justice McLaren, do you have any questions? No, thank you. Ms. Jorgensen? Nor do I. Thank you. All right. Well, thank you, counsel, for your arguments. We will, uh, take the matter under advisement and issue an, uh, a disposition in due course, uh, that will conclude, uh, our court session for the day. Thank you. Thank you.